UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

In Re:                  §           Case No. 16-10158-TMD
MICHAEL E. HUMPHREYS    §
DEBRA D. HUMPHREYS     §
     Debtor(s)           §                Chapter 7

**MOTION TO SELL REAL PROPERTY FREE AND CLEAR
OF LIENS PURSUANT TO §§363(b) and (f) AND REQUESTING
WAIVER OF RULE 6004(h) REQUIREMENT OF 14-DAY STAY**

**This pleading requests relief that may be adverse to your interests.**

**If no timely response is filed within 21 days from the date of service, the relief requested herein may be granted without a hearing being held.**

**A timely response is necessary for a hearing to be held.**

Ron Satija, ("Trustee") Chapter 7 Trustee files this *Motion to Sell Real Property Free and Clear of Liens Pursuant to §§363(b) and (f) and Requesting Waiver of Rule 6004(h) Requirement of 14-day Stay*, and would show the Court as follows:

1.     This case was filed on February 2, 2016.  The movant is the Trustee appointed in this case.

2.     Among the assets of the Estate was real property located at 300 Tallwood Trace, Saint Johns, FL, 32259, described as 38/1-7 Julington Creek Plantation Parcel 30 Lot 50 OR1475/945 (the "Property"). The Trustee proposes to sell the Property via a "Consented Sale" to Micah J. Ray and Shannon L. Ray ("Buyers"), 5244 Julington Creek Road Jacksonville, Florida 32258.

3.     The gross sales price of the Property is $355,000.00 with a "bankruptcy carve out" in the amount of approximately $20,000.00. All other closing costs that would normally be paid at the close of escrow, such as; real property taxes, brokerage

commissions, escrow charges, title charges, closing costs and other costs of sale shall be paid through escrow from the sale proceeds.

4.      FCI Lender Services, Inc. is the first lienholder, and JP Morgan Chase is the second leinholder. The Trustee anticipates that FCI Lender Services, Inc. and JP Morgan Chase will have no objection to the sale as proposed (i.e. FCI Lender Services, Inc.'s &and JP Morgan Chase's lien(s) will be paid at the amount agreed to by the lender as full satisfaction of its liens), all approved costs will be paid through escrow and the Estate will receive the benefit of approximately $20,000.00 "bankruptcy carve out."

5.      The Trustee understands (and as is customary) that at closing, FCI Lender Services, Inc. and JP Morgan Chase may want to negotiate the final allowed or disallowed costs and/or the final payoff to the lender. Provided that the Estate receives the $20,000.00 "bankruptcy carve out" at closing, the Trustee requests authorization to work with and agree with the lenders to resolve the allowance and disallowance of costs and/or payoff amounts as part of the escrow closing without the need for further notice, hearing or Court order. The following chart sets forth and accounts for all of the recorded liens and encumbrances against the Property described in the estimated ALTA settlement statement and their proposed treatment through the sale:

| Creditor | Description | Estimated Amount Owed | Proposed Payout | Treatment of Lien Through Sale |
|---|---|---|---|---|
| FCI Lender Services, Inc. | First Lien | $229,688.95 | $229,688.95 | This lien will be paid through escrow on the sale of the Property in the amount approved by FCI Lender Services, Inc. Thus, this lien will be released, discharged and terminated at the close of escrow and the Property will be sold free and clear of this lien and the lien will not attach to the sale proceeds. |
| JP Morgan | Second Lien | $71,715.16 | $71,715.16 | This lien will be paid through escrow on |

| | | | | |
|---|---|---|---|---|
| Chase | | | | the sale of the Property in the amount approved by JP Morgan Chase. Thus, this lien will be released, discharged and terminated at the close of escrow and the Property will be sold free and clear of this lien and the lien will not attach to the sale proceeds. |
| Title Ins Seller Credit | Title Ins Seller Credit | $1,850.00 | $1,850.00 | Title Ins Seller Credit will be paid in full through escrow on the sale transaction. |
| St Johns County Treasurer | 2017 Taxes | $2,424.81 | $2,424.81 | All outstanding real property taxes will be paid in full through escrow on the sale transaction. |
| Survey Fee | Survey Fee | $500.00 | $500.00 | Survey fee will be paid in full through escrow on the sale transaction. |
| Prominence Title & Escrow | Title Settlement Fees | $1,750.00 | $1,750.00 | Title settlement fees will be paid in full through escrow on the sale transaction. |
| Westcor Land Title Ins. Co. | Title Search Fee | $60.00 | $60.00 | Title search fees will be paid in full through escrow on the sale transaction. |
| Simplifile | Transfer Tax | $2,485.00 | $2,485.00 | Transfer tax will be paid in full through escrow on the sale transaction. |
| Elite Property Research | Estoppel Fee | $750.00 | $750.00 | Estoppel fee will be paid in full through escrow on the sale transaction. |
| Elite Property Research | Municipal Lien Certificate | $179.00 | $179.00 | Municipal lien certificate will be paid in full through escrow on the sale transaction. |
| Julington Creek Plantation POA | Estoppel Preparation fee | $100.00 | $100.00 | Estoppel Preparation fee will be paid in full through escrow on the sale transaction. |
| Ansbacher Law | Delinquent HOA Fees | $1,696.22 | $1,696.22 | Delinquent HOA fees will be paid in full through escrow on the sale transaction. |
| Ron Satija, Trustee | Bankruptcy Estate Fee | $20,837.47 | $20,837.47 | Bankruptcy Estate Fee will be paid in full through escrow on the sale transaction. |
| Broker Commissions | Commissions | $21,300.00 | $21,300.00 | Broker commissions will be paid in full through escrow on the sale transaction:<br>A. $7,100.00 Core Realty, LLC<br>B. $7,100.00 Crossview Realty<br>C. $7,100.00 BKGlobal |

6.     The proposed Real Estate Purchase and Sale Agreement is attached as Exhibit "A" and the estimated ALTA  settlement statement is attached as Exhibit "B" copies of which have been filed with this motion and may be requested from the Trustee.

7.     The Trustee requests waiver of the Rule 6004(h) requirement of 14-day stay.

WHEREFORE PREMISES CONSIDERED, Ron Satija, Trustee, prays that the Court grant authority to sell the Property, and pay the reasonable and necessary cost of closing including broker commission, pay the expenses and costs at closing, and for other just relief.

Respectfully submitted,

/s/ Ron Satija
Ron Satija, Trustee
SBT 24039158
PO Box 660208
Austin, Texas 78766-7208
Tel:  (512) 900-8223
Fax:  (512) 900-8224
Email: rsatija@satijatrustee.com

**CERTIFICATE OF SERVICE**

The signature above certifies that a true and correct copy of the foregoing document has been served, via a noticing service, by first class U.S. mail within two business days of June 28, 2017, on those listed on the attached matrix. Any and all exhibits have been filed with the court and are available upon request.

Albertelli Law
PO Box 23028
Tampa, FL 33623-2028

American Express
PO Box 297871
Ft. Lauderdale, FL 33329-7871

American Express Centurion Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

BB&T Mortgage
PO Box 3476
Greenville, SC 29602-3476

Discover Financial Services LLC
PO Box 3025
New Albany OH 43054-3025

Internal Revenue Service
Centralized Insolv Ops
PO Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Stop 5022 AUS
300 E 8th Street
Austin TX 78701-3233

JPM Chase
PO Box 24696
Columbus, OH 43224-0696

JPMorgan Chase Bank, N.A.
c/o BDFTE, LLP
15000 Surveyor Blvd Ste 100
Addison, TX 75001-4417

Morgan Stanley Mortgage Capital
Holdings
1585 Broadway
New York, NY 10036-8200

Rausch, Sturm, Israel, Enerson &
Hornik
15660 N Dallas Pkwy Ste 350
Dallas, TX 75248-3344

Social Security Administration
PO Box 15528
Kansas City, MO 64106-0528

Specialized Loan Servicing, LLC
PO Box 636005
Littleton, CO 80163-6005

VYSTAR CREDIT UNION
PO BOX 45085
JACKSONVILLE FL 32232-5085

Zwicker & Associates, P.C.
80 Minuteman Road
Andover, MA 01810-1008

United States Trustee - AU12
United States Trustee
903 San Jacinto Blvd Ste 230
Austin, TX 78701-2450

Michael and Debra Humphreys
511 Silver Creek Drive
Leander, TX 78641-8567

Michael J. Pledger
901 Mopac Expwy S Ste 300
Austin, TX 78746

Ron Satija
PO Box 660208
Austin, TX 78766-7208



**PURCHASE AND SALE AGREEMENT AND DEPOSIT RECEIPT**
**COPYRIGHTED BY AND SUGGESTED FOR USE BY THE MEMBERS OF**
**THE NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, INC.**



**REALTOR®**  (left)   **REALTOR®** (right)

1  Micah J Ray and Shannon L Ray (H&W)

2  _____ ("BUYER/PURCHASER") (if individual(s), name(s) as reflected on
3  government-issued photo ID and marital status) and  Ron Satija, BK Trustee for the Estate of Michael and Debra Humphreys.

4  ~~MICHAEL E and DEBRA D HUMPHREYS~~ _MR SR RS_ ("SELLER") (name(s)
5  as reflected on deed or government-issued photo ID and marital status), which terms may be singular or plural
6  and include the successors, personal representatives and assigns of BUYER and SELLER, hereby agree that
7  SELLER will sell and BUYER will buy the following described property with all improvements ("the Property"),
8  upon the following terms and conditions and as completed or marked. In any conflict of terms or conditions, that
9  which is added will supersede that which is printed or marked.
10 **PROPERTY DESCRIPTION**:
11 (a) Street address, city, zip code: 300 TALWOOD TRACE ST JOHNS FL 32259

12 (b) The Property is located in ST JOHNS County, Florida. Property Tax ID No: 2493000500

13 (c) Legal description of the Real Property (if lengthy, attach legal description):_____

14 Legal: 38/1-7 JULINGTON CREEK PLANTATION PARCEL 30 LOT 50 OR1475/945

15 _____

16 The Property will be conveyed by statutory general warranty deed, trustee's, personal representative's or
17 guardian's deed as appropriate to the status of SELLER (unless otherwise required herein), subject to current
18 taxes, existing zoning, recorded restrictive covenants governing the Property, and easements of record which do
19 not adversely affect marketable title. **Under Florida law, financing of the BUYER's principal residence**
20 **requires BUYER and BUYER's spouse to sign the mortgage(s). Under Florida law, the sale of a principal**
21 **residence requires SELLER's spouse to sign the deed even if the spouse's name is not on SELLER's**
22 **present deed.**

23 1.    PURCHASE PRICE to be paid by BUYER is payable as follows:

24        (A)  Binder deposit paid herewith, which will remain a binder until closing
25             unless sooner disbursed according to the provisions of this Agreement          $ _____ 0.00

26        (B)  Binder deposit due within 3 days after date of acceptance of this
27             Agreement                                                                      $ 3520.00  ~~3,250.00~~

28        (C)  Additional binder deposit due on or before _____ or
29             _____ days after date of acceptance of this Agreement            $ _____ 0.00

30        (D)  Balance due at closing (not including BUYER's closing costs, prepaid
31             items or prorations) by wire transfer or, if allowed by settlement agent,      14,080.00  ~~13,000.00~~
32             by cashier's or official check drawn on a United States banking institution    $ ~~14,250.00~~

33        (E)  Proceeds of a note and mortgage to be executed by BUYER to any
34             lender other than SELLER (base loan amount excluding FHA MIP,                   334,400.00
35             funding fees or financed closing costs)                                         $ ~~308,750.00~~

36        (F)  **Seller financing** by note and mortgage executed by BUYER to SELLER
37             (requires use of Seller Financing Addendum)                                     $ _____ 0.00

38        (G) **PURCHASE PRICE**                                                              352,000.00
                                                                                              $ ~~325,000.00~~

39        **Binder deposit(s) to be held by:**
40        Name:  Prominence Title & Escrow, LLC

41        Address: 605 E. Robinson Street Suite #720 Orlando, FL 32801

42        Phone: 407-545-4940                                    Fax:_____

43        E-mail: marlene@prominencetitle.com

44        **Note: In the event of a dispute between BUYER and SELLER regarding entitlement to the binder**
45        **deposit(s) held by an attorney or title insurance agency, Broker's resolution remedies referenced**
46        **in paragraph 12(A) hereof are not available.**

Page 1 of 10                                                                                0815r3

47 2. **FINANCING INFORMATION:** BUYER intends to finance this transaction as follows:
48     ☐ cash transaction
49     ☐ loan without financing contingency
50     ☑ loan as marked below with financing contingency. Loan Approval ☐ is ☑ is not conditioned upon the
51     closing of the sale of other real property owned by BUYER. If neither box is marked then Loan Approval
52     is not conditioned upon the closing of the sale of other real property owned by BUYER.

53     (A) ☐ **FHA: "**It is expressly agreed that notwithstanding any other provisions of this contract, the
54     PURCHASER shall not be obligated to complete the purchase of the Property described herein or to
55     incur any penalty by forfeiture of earnest money deposits or otherwise unless the PURCHASER has
56     been given in accordance with HUD/FHA or VA requirements a written statement by the Federal
57     Housing Commissioner, Department of Veteran Affairs, or a Direct Endorsement Lender setting forth
58     the appraised value of the Property of not less than $ _____. The PURCHASER shall
59     have the privilege and option of proceeding with consummation of this contract without regard to the
60     amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum
61     mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the
62     value or the condition of the Property. The PURCHASER should satisfy himself/herself that the price
63     and condition of the Property are acceptable."
64     **If Purchase Price changes, the dollar amount referenced in line 58 should be changed to reflect**
65     **the new Purchase Price.**

66     (B) ☐ **VA:** It is expressly agreed that, notwithstanding any other provisions of this Agreement, the BUYER
67     shall not incur penalty by forfeiture of earnest money or otherwise be obligated to complete the
68     purchase of the Property described herein, if this Agreement purchase price or cost exceeds the
69     reasonable value of the Property established by the Veterans Administration. The BUYER shall,
70     however, have the privilege and option of proceeding with the consummation of this Agreement without
71     regard to the amount of reasonable value established by the VA.

72     (C) ☑ **CONVENTIONAL OR USDA FINANCING:** If BUYER's financing is conventional or USDA, it is
73     expressly agreed that, notwithstanding any other provision of this Agreement, BUYER shall not incur
74     penalty by forfeiture of deposit(s) or otherwise be obligated to complete the purchase of the Property
75     described herein if the purchase price exceeds the appraised value of the Property as established by
76     the lender's appraiser. BUYER shall, however, have the option of proceeding with the consummation
77     of this Agreement without regard to the amount of said appraised value. This contingency shall expire
78     5 days after expiration of the Loan Approval Period.

79     (D) ☐ **OTHER FINANCING:** ☐ **SELLER FINANCING** ☐ **MORTGAGE ASSUMPTION.** If marked, see
80     applicable Addendum attached hereto and made a part hereof.

81     **APPLICATION:** Within __5__ days (5 days if left blank) after date of acceptance of this Agreement,
82     BUYER will complete the application process for mortgage loan(s) and pay lender for credit report(s).
83     BUYER will timely furnish any and all credit, employment, financial, and other information required by
84     lender, and make a continuing and diligent effort to obtain loan approval. **BUYER will pay for the**
85     **appraisal within 3 days after having provided lender with written notice of intent to proceed and**
86     **will instruct the lender to order the appraisal within 3 days after time of such payment;**
87     **otherwise, BUYER is in default.** BUYER hereby authorizes BUYER's lender to disclose information
88     regarding the status, progress and conditions of loan application and loan approval to SELLER,
89     SELLER's attorney, Broker(s) to this transaction, and the closing attorney/settlement agent. **BUYER**
90     **and SELLER hereby further authorize BUYER's lender and the closing attorney/settlement agent**
91     **to provide a copy of the combined settlement statement and the BUYER and SELLER Closing**
92     **Disclosures to Broker(s) to this transaction when provided to BUYER and SELLER, both before**
93     **and at closing (consummation).**
94     Unless the mortgage loan is approved within __45__ days (45 days if left blank) after date of
95     acceptance of this Agreement, hereinafter called the Loan Approval Period, without contingencies
96     other than lender-required repairs/replacements/treatments, marketable title and survey, **BUYER shall**
97     **have 5 days thereafter to terminate this Agreement by written notice to the SELLER, or be**
98     **deemed to have waived the financing contingency.** If BUYER does not terminate this Agreement
99     within said 5 day period neither BUYER nor SELLER shall have a right to terminate this Agreement
100     under this paragraph, the binder deposit shall not be refundable because of BUYER's failure to obtain
101     financing, and this Agreement shall continue through the date of closing.

102 3. **TITLE EXAMINATION AND DATE OF CLOSING (CONSUMMATION):**
103     (A) If title evidence and survey, as specified below, show SELLER is vested with marketable title,
104     including legal access, the transaction will be closed and the deed and other closing papers delivered
105     on or before ☐ ____ days (15 days if left blank) after the Loan Approval Period, ☐ _____ (specific
106     date), or ☑ __45__ days after date of acceptance of this Agreement, **unless extended by other**
107     **conditions of this Agreement.**

108 Marketable title means title which a Florida title insurer will insure as marketable at its regular rates and
109 subject only to matters to be cured at closing and the usual exceptions such as survey, current taxes,
110 zoning ordinances, covenants, restrictions and easements of record which do not adversely affect
111 marketable title. From the date of acceptance of this Agreement through closing, SELLER will not take
112 or allow any action to be taken that alters or changes the status of title to the Property.

113 (B) **Extension of Date of Closing:** If closing cannot occur by the date of closing due to Consumer
114 Financial Protection Bureau (CFPB) delivery requirements, the date of closing shall be extended for the
115 period necessary to satisfy CFPB delivery requirements, not to exceed 10 days. If extreme weather, act
116 of God, act of terrorism or war ("force majeure") prevents any obligation under this Agreement from
117 being performed or causes the unavailability of insurance, all time periods, including the date of closing,
118 will be extended for the period of time that any of the above prevents performance of any obligation
119 under this Agreement, but in no event more than 5 days after restoration of services essential to the
120 closing process and availability of applicable insurance. If force majeure prevents performance of any
121 obligation under this Agreement for more than 30 days beyond the date of closing, BUYER or SELLER
122 may terminate this Agreement by delivering written notice to the other party.

123 If title evidence or survey reveals any defects which render the title unmarketable, or if the Property is
124 not in compliance with governmental regulations/permitting, BUYER or closing agent will have 5 days
125 from receipt of title commitment, survey or written evidence of any permitting/regulatory issue to notify
126 SELLER of such defects. SELLER agrees to use reasonable diligence to cure such defects at
127 SELLER's expense and will have 30 days to do so, in which event this transaction will be closed within
128 10 days after delivery to BUYER of evidence that such defects have been cured but not sooner than
129 the date of closing. SELLER agrees to pay for and discharge all due and delinquent taxes, liens and
130 other monetary encumbrances unless otherwise agreed in writing. If SELLER is unable to convey
131 marketable title, or to cure permitting/regulatory compliance issues, BUYER will have the right to
132 terminate this Agreement, or to accept the Property as SELLER is able to convey, and to close this
133 transaction upon the terms stated herein, which election will be exercised within 10 days after BUYER's
134 receipt of SELLER's written notice of SELLER's inability to cure.

135 4. **TITLE EVIDENCE / MUNICIPAL LIEN SEARCH:**

136 (A) TITLE EVIDENCE: At least ___10___ days before date of closing (10 days if left blank), the party paying
137 for the title insurance shall cause the title agent to issue a title insurance commitment for an owner's
138 policy in the amount of the Purchase Price and a title insurance commitment for a mortgage policy in the
139 amount of BUYER's loan(s) if BUYER is financing the purchase. Any expense of curing title defects
140 such as, but not limited to, legal fees, discharge of liens and recording fees will be paid by SELLER.

141 (B) MUNICIPAL LIEN SEARCH: If a municipal lien search is required in this Agreement, at least
142 _____ days before date of closing (10 days if left blank), the party paying for this search shall
143 obtain and provide to the closing attorney/settlement agent a municipal lien search.

144 5. **SURVEY:** At least ___10___ days before date of closing (10 days if left blank), the party paying for the survey
145 shall cause to be delivered to the closing attorney/settlement agent **(mark only one box):** ☑ a new staked
146 survey of the Property dated within (3) months of date of closing showing all improvements, certified to
147 BUYER, SELLER, lender, and the title insurer in compliance with Florida law; or ☐ a copy of a previously
148 made survey of the Property showing all existing improvements and sufficient to allow removal of the
149 survey exceptions from the title insurance commitment **or, if insufficient, then a new staked survey is**
150 **required.** ☐ No survey is required. **If a surveyor's flood elevation certificate is required, BUYER**
151 **shall pay for it.**

152 6. **CASUALTY LOSS OR DAMAGE:** If the Property is damaged by any casualty prior to closing, SELLER
153 shall immediately notify BUYER in writing. If the cost of repair or restoration does not exceed 3% of the
154 Purchase Price, cost of restoration will be an obligation of SELLER and closing will proceed pursuant to the
155 terms of this Agreement. If the cost of repair or restoration exceeds 3% of the Purchase Price, BUYER may
156 terminate this Agreement by giving written notice to SELLER within 10 days after BUYER's receipt of
157 written notice from SELLER of the casualty. If BUYER has not so terminated, SELLER shall have 30 days
158 from the end of said 10 day period to complete the repairs in accordance with the conditions required by
159 paragraph 14 and all applicable laws. Closing shall occur within 20 days thereafter but not sooner than the
160 date of closing as set forth in paragraph 3.
161 If BUYER has not terminated as above, and the cost of repair or restoration exceeds said 3% and SELLER
162 declines to pay the excess, then SELLER must notify BUYER in writing of same within 15 days after the
163 casualty. In this event, BUYER may either purchase the Property as is, together with any insurance
164 proceeds payable by virtue of such casualty (to be assigned by SELLER to BUYER upon closing) plus an
165 amount equal to SELLER's deductible, or BUYER may terminate this Agreement. BUYER shall have 5
166 days after receipt of SELLER's written notice of refusal to pay the excess costs to terminate this
167 Agreement, or be deemed to have elected to proceed with this transaction.

7. **PRORATIONS:** All taxes, rents, condominium and homeowners' association fees, solid waste collection/disposal fees, stormwater fees, and Community Development District (CDD) fees will be prorated through day before closing based on the most recent information available to the closing attorney/settlement agent, using the gross tax amount for estimated tax prorations. The day of closing shall belong to BUYER. Any proration based on an estimate shall be reprorated at the request of either party upon receipt of the actual bill based on the maximum discount available.

**PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY UPON SELLER'S CURRENT PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.

8. **BUYER WILL PAY:**

   (A) CLOSING COSTS:

   ☑ Recording fees ☐ One year home warranty _____
   ☑ Intangible tax ☐ VA funding fee
   ☑ Note stamps ☐ Mortgage insurance premium
   ☑ Simultaneous mortgagee title insurance policy ☐ Mortgage discount not to exceed_____
   ☑ Title insurance endorsements ☐ Survey
   ☑ Lender's flood certification fees ☐ Closing attorney/settlement fee
   ☑ Mortgage origination charges ☐ BUYER's courier fees
   ☑ Appraisal fee ☐ Title search
   ☑ Credit report (s) ☐ Municipal lien search
   ☑ Inspection and reinspection fees ☐ Real estate brokerage fee $_____
   ☑ Tax service fee (FHA BUYER may pay) ☐ Mortgage transfer and assumption charges
   ☑ Wood-destroying organism report (VA BUYER may pay)
   ☐ Other _____

   (B) All other charges required by lender(s) in connection with the BUYER's loan(s), unless prohibited by law or regulation, together with lender related settlement/title service fees.

   (C) Condominium and homeowners' association application/transfer fees, the cost of completion of a lender's condominium questionnaire fees, and capital contributions, if required.

   (D) PREPAIDS: Prepaid hazard, flood and wind insurance, taxes, interest and mortgage insurance premiums if required by the lender.

9. **SELLER WILL PAY:**

   (A) CLOSING COSTS:

   ☑ Deed stamps ☐ One year home warranty _____
   ☑ Owner's title insurance policy ☑ Real estate brokerage fee(s)
   ☑ Title search ☐ Title insurance endorsements
   ☑ Closing attorney/Settlement fee ☐ Lender's flood certification fees
   ☑ Survey ☐ Mortgage discount not to exceed_____
   ☑ Satisfaction of mortgage and recording fee ☐ Appraisal fee
   ☑ SELLER's courier fees
   ☐ Other _____
   _____

   (B) Condominium and homeowners' association estoppel/statement fees, payable upon request by the closing attorney/settlement agent.

   (C) All other charges required by lender(s) in connection with the BUYER's loan(s) which BUYER is prohibited from paying by law or regulation.

   (D) If SELLER agrees to pay any amount toward BUYER's closing costs (which shall include BUYER's prepaids), SELLER shall be obligated to pay, upon closing, **only those costs marked in paragraph 8(A)** and those specified in paragraphs 8(B), 8(C) and 8(D). This amount will include all VA non-allowables not specified to be paid by SELLER.

   (E) All mortgage payments, condominium and homeowners association fees and assessments, CDD fees and government special assessments due and payable shall be paid current at SELLER's expense at the time of closing.

   (F) Public Body Special Assessments. At closing, SELLER will pay: (i) the full amount of liens imposed by a public body that are certified, confirmed and ratified before the date of closing not payable in

225 installments; and (ii) the amount of the public body's most recent estimate or assessment for an
226 improvement which is substantially completed as of date of acceptance of this Agreement but that has
227 not resulted in a lien being imposed on the Property before closing. "Public body" does not include a
228 condominium or homeowners' association or CDD.
229 If public body special assessments may be paid in installments (MARK ONE)
230 ☐ BUYER shall pay installments due after date of closing.
231 ☑ SELLER will pay the assessment in full prior to or at the time of closing.

232 **IF NEITHER BOX IS MARKED BUYER SHALL PAY INSTALLMENTS DUE AFTER THE DATE OF**
233 **CLOSING. This paragraph 9(F) shall not apply to liens imposed by a Community Development**
234 **District created by Florida Statute 190. The special benefit tax assessment imposed by a**
235 **Community Development District shall be treated as an ad valorem tax.**

236 10. **DEFAULT:**

237 (A) If BUYER defaults under this Agreement, all binder deposit(s) paid and agreed to be paid (after
238 deduction of unpaid closing costs incurred except inspection fee(s), credit report and appraisal fees
239 which shall be BUYER's sole responsibility), will be retained by SELLER as agreed upon liquidated
240 damages, consideration for the execution of this Agreement, and in full settlement of any claims.
241 BUYER and SELLER will then be relieved of all obligations to each other under this Agreement except
242 for BUYER's responsibility for damages caused during inspections as described in paragraph 14.

243 (B) If SELLER defaults under this Agreement, BUYER may either: (i) seek specific performance; or (ii) elect
244 to receive the return of BUYER's binder deposit(s) without thereby waiving any action for damages
245 resulting from SELLER's default.

246 (C) Binder deposit(s) retained by SELLER as liquidated damages will be distributed pursuant to the terms
247 of the listing agreement.

248 11. **NON-DEFAULT PAYMENT OF EXPENSES:**

249 (A) If BUYER fails to perform, but is not in default, all loan and sale processing and closing costs incurred,
250 whether the same were to be paid by BUYER or SELLER, will be the responsibility of BUYER with
251 costs deducted from the binder deposit(s), and the remainder of the binder deposit(s) shall be returned
252 to BUYER. This will include but not be limited to the transaction not closing because BUYER does not
253 obtain the required financing as provided in this Agreement or BUYER invokes BUYER's right to
254 terminate under any contingency in this Agreement; however, if Buyer elects to terminate this
255 Agreement pursuant to paragraphs 2(A), 2(B), 2(C) or 14, each party will be responsible for all loan and
256 sale processing costs specified to be paid by that party, except all inspections, including WDO Report,
257 which shall be paid by BUYER.

258 (B) If SELLER fails to perform, but is not in default, all loan and sale processing and closing costs incurred,
259 whether the same were to be paid by BUYER or SELLER, will be the responsibility of SELLER, and
260 BUYER will be entitled to the return of the binder deposit(s). This will include the transaction not closing
261 because SELLER elects not to pay for the amount in excess of the amounts in paragraph 6 with
262 respect to casualty, loss or damage, or because SELLER cannot deliver marketable title, or is unable to
263 cure permitting/regulatory compliance issues, but shall not include failure to appraise or termination
264 pursuant to paragraph 14.

265 12. **BINDER DISPUTE, WAIVER OF JURY TRIAL AND ATTORNEY FEES:**

266 (A) In the event of a dispute between BUYER and SELLER as to entitlement to the binder deposit(s), the
267 holder of the binder deposit(s) may file an interpleader action in accordance with applicable law to
268 determine entitlement to the binder deposit(s), and the interpleader's attorney's fees and costs shall be
269 deducted and paid from the binder deposit(s) and assessed against the non-prevailing party, or the
270 broker holding the binder deposit(s) may request the issuance of an Escrow Disbursement Order from
271 the Florida Division of Real Estate. In either event, BUYER and SELLER agree to be bound thereby,
272 and shall indemnify and hold harmless the holder of the binder deposit(s) from all costs, attorney's fees
273 and damages upon disbursement in accordance therewith.

274 (B) All controversies and claims between BUYER, SELLER or Broker, directly or indirectly, arising out of or
275 relating to this Agreement or this transaction will be determined by non-jury trial. BUYER, SELLER and
276 Broker, jointly and severally, knowingly, voluntarily and intentionally waive any and all rights to a trial by
277 jury in any litigation, action or proceeding involving BUYER, SELLER or Broker, whether arising directly
278 or indirectly from this Agreement or this transaction or relating thereto. Each party will be liable for their
279 own costs and attorney's fees except for interpleader's attorney's fees and costs, which shall be
280 payable as set forth in paragraph 12(A).

281 13. **PROPERTY DISCLOSURE:** SELLER does hereby represent that SELLER has the legal authority and
282     capacity to convey the Property, and that no other person or entity has an ownership interest in the Property.
283     SELLER represents that SELLER has no knowledge of facts materially affecting the value of the Property
284     other than those which BUYER can readily observe **except**: _____
285     _____
286     _____.
287     SELLER further represents that the Property is not now and will not be prior to the date of closing subject to
288     a municipal or county code enforcement proceeding and that no citation has been issued **except:**
289     _____
290     _____.
291     If the Property is or becomes subject to such a proceeding prior to the date of closing, SELLER shall
292     comply with Florida Statutes 125.69 and 162.06; notwithstanding anything contained within said Statutes,
293     SELLER shall be responsible for compliance with applicable code and all orders issued in such proceeding
294     unless otherwise agreed herein. SELLER has received no written or verbal notice from any governmental
295     entity as to uncorrected building, environmental or safety code violations, and SELLER has no knowledge
296     of any repairs or improvements made to the Property not then in compliance with governmental
297     regulations/permitting **except**:_____
298     _____.

299     (A) **Energy Efficiency:** In accordance with Florida Statute 553.996, notice is hereby given that the BUYER
300         of real property with a building for occupancy located thereon may have the building's energy-efficiency
301         rating determined. BUYER acknowledges receipt of the Florida energy efficiency rating information
302         brochure prepared by the State of Florida at the time of or prior to BUYER signing this Agreement.

303     (B) **Radon Gas Disclosure:** Radon gas is a naturally occurring radioactive gas that, when it has
304         accumulated in a building in sufficient quantities, may present health risks to persons who are exposed
305         to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in
306         Florida. Additional information regarding radon testing may be obtained from your county health unit.

307     (C) **Flood Zone:** BUYER is advised to verify with the lender and appropriate government agencies whether
308         flood insurance is required and what restrictions apply to improving the Property and rebuilding in the
309         event of casualty.

310     (D) **Community Development District:** The Property may be in a Community Development District
311         (CDD). See BUYER'S Community Development District Acknowledgement for further information.

312     (E) **Mold Disclosure:** Mold is naturally occurring. The presence of mold in a home or building may cause
313         health problems and damage to the Property.

314     (F) **Defective Drywall:** The presence of Defective Drywall in a home may cause health problems and
315         damage to the Property.

316     (G) **Airport Notice Zones**: If the Property is in Noise Zones A, B and/or an Airport Notice Zone, BUYER
317         and SELLER agree to comply with the City of Jacksonville Ordinance Code Section 656.1010.

318     (H) **Historic Districts:** BUYER is advised to verify with appropriate government agencies whether the
319         Property is in an historic district; if so, the Property is subject to additional guidelines and restrictions.
320         See Historic District Disclosure for further information.

321     ( I ) **Other**: BUYER should exercise due diligence with respect to information regarding neighborhood
322         crimes, sexual offenders/predators and any other matters BUYER deems relevant to the purchase of the
323         Property.

324 14. **MAINTENANCE, INSPECTION AND REPAIR:** SELLER will maintain the Property in its present condition
325     until closing, except for normal wear and tear and any agreed upon repairs/replacements/treatments.
326     BUYER and SELLER agree that the cost of inspections and investigations requested by BUYER are exempt
327     from paragraph 11 of this Agreement and will be paid by BUYER regardless of the outcome of this
328     Agreement. If BUYER elects not to have inspections and investigations performed, or fails to make a timely
329     request for repairs/replacements/treatments as set forth in this paragraph 14, BUYER accepts the Property
330     in its **"AS IS"** condition as of the date of acceptance of this Agreement. BUYER will be responsible for repair
331     of all damages to the Property resulting from inspections and investigations, and BUYER will return the
332     Property to its pre-inspection condition. These obligations shall survive termination of this Agreement.

333     (A) **Access and Utilities:** SELLER will make the Property available for inspections and investigations during
334         the time provided for inspections and investigations in this paragraph and, if not, the time for inspections
335         and investigations will be extended by the time access was denied. If utilities are not active at the time
336         the inspections, investigations or appraisal are to be made, SELLER will pay to have the utilities
337         activated for these purposes.

338 Within 10 days after the date of acceptance of this Agreement ("Inspection Period"), BUYER may have
339 the Property inspected and investigated by appropriately licensed inspectors or persons/entities holding
340 a Florida license to build, repair or maintain the items inspected. BUYER and BUYER'S Broker have the
341 right to be present during all inspections and investigations. The inspections and investigations include,
342 but are not limited to:

343 (1) testing and inspecting all major appliances, heating, cooling, mechanical, electrical and plumbing
344 systems, well and septic (including drain field systems), the roof, pool and pool equipment, defective
345 drywall, defective flooring, mold, drainage, radon gas and environmental and sinkhole conditions;
346 (2) inspecting for active infestation and/or damage from termites and other wood-destroying organisms;
347 and
348 (3) verifying the cost and availability of insurance, that condominium/homeowner's association insurance
349 is satisfactory to BUYER's lender, verifying square footage measurements, and reviewing applicable
350 zoning and historic classifications, covenants, restrictions, easements, rules, and other governing
351 documents affecting the Property.

352 If BUYER determines, in BUYER's **sole discretion**, that the Property is not acceptable to BUYER,
353 BUYER may prior to the expiration of the Inspection Period:

354 • terminate this Agreement by delivering written notice of such election to SELLER together with a
355 copy of all written reports, if any, of inspections and investigations if such reports are requested by
356 SELLER; **(delivery of the NEFAR Release of Deposit and Cancellation of Purchase and Sale**
357 **Agreement is not sufficient as a written notice of termination)** or

358 • submit BUYER's written request to SELLER for repairs/replacements/treatments, together with a copy
359 of all written reports, if any, of inspections and investigations. **BUYER and SELLER shall have 7**
360 **days from SELLER's receipt of such request within which to enter into a written agreement for**
361 **repairs/replacements/treatments. If BUYER and SELLER have not entered into such written**
362 **agreement within the 7 days, then BUYER may terminate this Agreement by giving written**
363 **notice of termination to SELLER within 3 days after the 7 days, or be deemed to have accepted**
364 **the Property without repairs/replacements/treatments except as may otherwise be provided in**
365 **this Agreement. BUYER'S request for repairs/replacements/treatments or written agreement**
366 **between BUYER and SELLER as to same shall not eliminate BUYER's right to terminate this**
367 **Agreement at any time within the Inspection Period.**

368 If this Agreement is terminated as provided in this paragraph, BUYER and SELLER shall be released
369 from all further obligations under this Agreement except as otherwise provided in this paragraph 14.
370 Prior to the binder deposit(s) being delivered to BUYER, BUYER shall provide SELLER with paid
371 receipts for all investigations and inspections, if any.

372 BUYER shall be responsible for prompt payment for all of BUYER's inspections and investigations.
373 BUYER agrees to indemnify and hold SELLER harmless from all losses, damages, claims, suits, and
374 costs which may arise out of any contract, agreement, or injury to any person or property as a result of
375 any activities of BUYER and BUYER's agents and representatives relating to inspections and
376 investigations except for any losses, damages, claims, suits, or costs arising out of pre-existing
377 conditions of the Property or out of SELLER's negligence, willful acts or omissions.

378 SELLER shall have any agreed upon repairs/replacements/treatments completed by appropriately
379 licensed persons within 10 days after entering into a written agreement for such with BUYER and receipt
380 by SELLER of written notice of BUYER's loan approval, if applicable. SELLER shall notify BUYER in
381 writing upon completion of all agreed upon repairs/replacements/treatments and provide BUYER with
382 copies of all receipts for same at that time. BUYER may, within 3 days after receipt of SELLER's written
383 notice and delivery of such receipts, reinspect the Property solely to verify that SELLER has completed
384 the agreed upon repairs/replacements/treatments. No other repair/replacement/treatment issues may be
385 raised as a result of this reinspection.

386 Walk-Through: Prior to closing, BUYER may walk through the Property solely to verify that SELLER has
387 maintained the Property in the condition required in this Agreement.

388 (B) **Broker's Notice:** Neither the Listing Broker nor Selling Broker warrants the condition, size or square
389 footage of the Property, and neither is liable to BUYER or SELLER in any manner whatsoever for any
390 losses, damages, claims, suits, and costs regarding same. BUYER and SELLER hereby release and
391 hold harmless said Brokers and their licensees from any losses, damages, claims, suits, and costs
392 arising out of or occurring with respect to the condition, size or square footage of the Property. Brokers
393 shall not be liable for the performance by any provider of services or products recommended by Brokers.
394 Such **recomm**endations are made as a courtesy. BUYER and SELLER may select their own providers
395 of services or products.

396 (C) **BUYER's Responsibility:** Repairs, replacements and treatments to the Property after date of closing or
397 BUYER's possession, whichever occurs first, will be BUYER's responsibility unless otherwise agreed in
398 writing.

15. **POSSESSION:**

☑ BUYER will be given possession at closing

☐ BUYER will be given possession within ___ days after closing at no rental cost to SELLER or as otherwise set forth in paragraph 17 hereof.

If neither box is marked then BUYER will be given possession at closing.

If possession is to be delivered before or after closing, the BUYER and SELLER shall execute a separate possession agreement prepared by legal counsel at possessor's expense at least 5 days before closing on terms reasonably acceptable to BUYER and SELLER.

SELLER shall sweep the Property clean and remove all personal property not included in sale by time of BUYER's possession.

☑ SELLER represents that there are no parties in possession other than SELLER, or that any parties in possession other than Seller shall vacate the Property before the date of closing.

☐ BUYER understands that the Property is available for rent or rented and the tenant may continue in possession following closing unless otherwise agreed in writing between the landlord and tenant. Within 5 days after date of acceptance of this Agreement, SELLER shall provide BUYER with a copy of all current leases and rent rolls for the Property and deliver to BUYER originals of same at closing. At closing, all tenant deposits will be transferred from SELLER to BUYER, and any leases shall be deemed to have been assigned by SELLER to BUYER. This Agreement shall be deemed an assignment of any leases upon closing, and the obligations thereunder assumed by BUYER.

16. **PERSONAL PROPERTY:** The following items, if owned by SELLER and existing on the Property on the date of the initial offer, are included in the Purchase Price: range/oven, cooktop, dishwasher, disposal, ceiling fans, intercom, audio/visual system wiring, solar panels, light fixtures and bulbs, smoke detector(s), bathroom mirrors, drapery hardware, all window treatments, garage door opener and controls, security gate and other access devices, mailbox and mailbox key, if applicable; fence, plants and shrubbery, as now installed on the Property, and those additional items checked below (to which no value has been assigned).

☑ Refrigerator(s)   ☐ Microwave Oven   ☐ Pool fence/barrier   ☐ Mounted/installed speakers
☐ Washer   ☐ Window/wall a/c   ☐ Pool Sweep   ☐ Water softener/treatment system
☐ Dryer   ☐ Built-in Generator   ☐ Above Ground Pool   ☐ Storm shutters and panels
☑ Gas logs   ☑ Wine cooler   ☐ Storage Shed   ☐ Spa or hot tub with heater
☐ Trash Compactor
☐ Other (specify):_____

_____

_____

Items specifically excluded from this Agreement:

_____

_____

_____

17. **ADDENDA/RIDERS/DISCLOSURES:**

If marked the following are attached hereto and made a part of this Agreement:

☐ Seller's Property Disclosure
☐ Condominium Rider
☑ Homeowners' Association/Community Disclosure Addendum
☐ Lead-Based Paint Disclosure For Residential Sales Addendum (for pre-1978 homes)
☐ Continued Marketing Addendum
☐ Coastal Construction Control Line Disclosure Addendum
☑ Short Sale Addendum
☐ USDA Financing Addendum
☐ For Your Protection: Get a Home Inspection (for FHA Financing)
☐ Counter Offer Addendum (To accept a counter offer, BUYER and SELLER must sign both this Agreement and the Counter Offer Addendum.)
☐ Other (Specify here) _____

**ADDITIONAL TERMS AND CONDITIONS:** _____

_____

_____

_____

454 _____

455 _____

456 _____

457 _____

458 _____

459 _____

460 _____

461 18. **COMPLETE AGREEMENT AND MISCELLANEOUS PROVISIONS:** BUYER and SELLER acknowledge
462 receipt of a copy of this Agreement. Except for brokerage agreements, BUYER, SELLER and Broker agree
463 that the terms of this Agreement constitute the entire agreement between them and that they have not
464 received or relied on any representations by Brokers or any material regarding the Property including, but
465 not limited to, listing information, that are not expressed in this Agreement. No prior or present agreements
466 or representations will bind BUYER, SELLER or Brokers unless incorporated into this Agreement.
467 Modifications of this Agreement will not be binding unless in writing, signed and delivered by the party to be
468 bound. This Agreement and any modifications to this Agreement may be signed in counterparts and may be
469 executed and/or transmitted by electronic media, including facsimile and email. Headings are for reference
470 only and shall not be deemed to control interpretations. If any provision of this Agreement is or becomes
471 invalid or unenforceable, all remaining provisions will continue to be fully effective. Neither this Agreement
472 nor any memorandum hereof will be recorded in any public records. For emphasis, some provisions have
473 been bolded and or capitalized, but every provision in this Agreement is significant and should be reviewed
474 and understood. No provision should be ignored or disregarded because it is not in bold or otherwise
475 emphasized in some manner.

476 In the performance of the terms and conditions of this Agreement each party will deal fairly and in good faith with
477 the other. Notice to the Broker for a party shall be deemed notice to that party. All assignable repair and treatment
478 contracts and warranties are deemed assigned by SELLER to BUYER at closing unless otherwise stated herein.
479 SELLER agrees to sign all documents necessary to accomplish same, at BUYER's expense, if any.

480 19. **TIME IS OF THE ESSENCE IN THIS AGREEMENT**. As used in this Agreement, "days" means calendar
481 days. Any time periods herein, other than the time of acceptance, which end on a Saturday, Sunday or
482 federal holiday shall extend to the next day which is not a Saturday, Sunday or federal holiday. All
483 references to a date other than the date of acceptance shall end at 7:00 p.m. Eastern Time (ET).

484 20. **BUYER'S AND SELLER'S NOTICES:** BUYER and SELLER represent that they have not entered into any
485 other agreements with real estate brokers other than those named below with regard to the Property.
486 BUYER and SELLER give the Brokers authorization to advise surrounding neighbors who will be the new
487 owner of the Property. "Broker", as used in this Agreement, is deemed to include all of Broker's licensees
488 licensed to sell real property in the State of Florida.

489 21. **ESCROW DISCLOSURE:** BUYER and SELLER agree that Broker may place escrow funds in an interest
490 bearing account pursuant to the rules and regulations of the Florida Real Estate Commission and retain any
491 interest earned as the cost associated with maintenance of said escrow.

492 22. **SOCIAL SECURITY OR TAX I.D. NUMBER**: BUYER and SELLER agree to provide their respective Social
493 Security or Tax I.D. number to closing attorney/settlement agent upon request.

494 23. **1031 EXCHANGE:** BUYER or SELLER may elect to effect a tax-deferred exchange under Internal
495 Revenue Service Code Section 1031(which shall not delay the closing), in which event BUYER and
496 SELLER agree to sign documents required to effect the exchange, provided the non-exchanging party shall
497 not incur any costs, fees or liability as a result of or in connection with the exchange.

498 24. **PAYOFF AUTHORIZATION:** SELLER hereby authorizes the closing attorney/settlement agent to obtain
499 mortgage payoff letters (including from foreclosure attorneys) and homeowner's and condominium
500 association status letters on behalf of SELLER.

501 25. **FIRPTA TAX WITHHOLDING:** If any SELLER is a "foreign person" as defined by the Foreign Investment in
502 Real Property Tax Act, the BUYER and SELLER shall comply with the Act, which may require SELLER to
503 provide additional funds at closing. **SELLER agrees to disclose to the closing attorney/settlement
504 agent at least 10 days before closing if any SELLER is not a U.S. citizen or resident alien.**

505 26. **TIME OF ACCEPTANCE:** IF THIS OFFER IS NOT SIGNED BY BUYER AND SELLER AND DELIVERED
506 TO BUYER AND SELLER OR THEIR RESPECTIVE BROKER (INCLUDING BY FAX AND
507 ELECTRONICALLY) ON OR BEFORE _8__:01 ☐ A.M. ☑ P.M. _1/24/17___ (DATE), THIS OFFER WILL
508 TERMINATE. THE TIME FOR ACCEPTANCE OF ANY COUNTER OFFER SHALL BE _____HOURS
509 (24 HOURS IF LEFT BLANK) FROM THE TIME THE COUNTER OFFER IS DELIVERED.

510 27. **DATE OF ACCEPTANCE**: The date of acceptance of this Agreement shall be the date on which this
511 Agreement is last executed by BUYER and SELLER and a fully executed copy has been delivered to
512 BUYER and SELLER.

513 **If this Agreement is not understood, BUYER and SELLER should seek competent legal advice.**

514 **WIRE FRAUD ALERT. Criminals are hacking email accounts of real estate agents, title companies,**
515 **settlement attorneys and others, resulting in fraudulent wire instructions being used to divert funds to**
516 **the account of the criminal. The emails look legitimate but they are not. Buyer and Seller are advised**
517 **not to wire any funds without personally speaking with the intended recipient of the wire to confirm**
518 **the routing number and the account number. Buyer and Seller should not send personal information**
519 **such as social security numbers, bank account numbers and credit card numbers except through**
520 **secured email or personal delivery to the intended recipient.**

521 _Micah J. Ray_ _____ 01/24/17 _____ _JH_ _____ 2/15/17

522 BUYER                DATE         SELLER                                          DATE
    _Shavawn Ray_                    _Ron Satija, in his sole capacity as Chapter 7 Trustee for the Bankruptcy_
523                      01/24/17    _Estate of Michael and Debra Humphreys, Case No. 16-10158_
524 BUYER                DATE         SELLER                                          DATE

525 _____    _____   _____                       _____
526 BUYER                DATE         SELLER                                          DATE

527 _____    _____   _____                       _____
528 BUYER                DATE         SELLER                                          DATE

529                                  ☐ Mark if any SELLER is not a U.S. Citizen or resident alien.

530 Broker, by signature below, acknowledges receipt of $ _____ ☐ cash ☐ check as the
531 binder deposit specified in paragraph 1(A) of this Agreement. It will be deposited and held in escrow pending
532 disbursement according to the terms hereof, together with any additional binder deposit(s) escrowed by the
533 terms of this Agreement.

534 _____    _____    _____
535 Company                             By                          Title

END OF PURCHASE AND SALE AGREEMENT

536 **Broker joins in this Agreement to evidence Broker's consent to be bound by the provisions of paragraph**
537 **12 above.**

538 CROSSVIEW REALTY
539 Firm Name of Selling Broker                         Firm Name of Listing Broker

540 BK3049644
541 Broker's State License ID (BK Real Estate Number)   Broker's State License ID (BK Real Estate Number)

542 904-503-0672
543 Phone for Selling Broker                            Phone for Listing Broker

544 12627 SAN JOSE BLVD
545 Selling Broker Office Address                       Listing Broker Office Address

546 JACKSONVILLE FL 32223
547 Selling Broker City, State, Zip Code                Listing Broker City, State, Zip Code

548 By: _Chris Hone_                                    By: _____
549 Authorized Licensee Signature                       Authorized Licensee Signature

550 CHRIS HONE
551 Printed Name of Licensee                            Printed Name of Licensee

552 CHRIS@CROSSVIEWREALTY.COM
553 Email Address                                       Email Address

554 904-536-8685
555 Phone for Selling Licensee                          Phone for Listing Licensee

556 BK3049644
557 Licensee's State License ID                         Licensee's State License ID
558 (BK or SL Real Estate Number)                       (BK or SL Real Estate Number)



# SHORT SALE ADDENDUM

**COPYRIGHTED BY AND SUGGESTED FOR USE BY THE MEMBERS OF THE
NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, INC.**



This Addendum is made by the undersigned BUYER and SELLER and is incorporated into and made a part of the Purchase and Sale Agreement and Deposit Receipt ("the Agreement") between BUYER and SELLER. Where this Addendum is in conflict with the terms of the Agreement, the terms contained in this Addendum will govern. This Addendum is referenced in the Agreement and pertains to the following Property:

300 TALWOOD TRACE ST JOHNS FL 32259
_____

_____.

This transaction is referred to as a Short Sale because the Purchase Price is less than or "short" of the amount(s) owed for SELLER's closing costs and prorated items and to pay off encumbrance holders.

1. SELLER represents that the Purchase Price may be less than the amounts owed for SELLER's closing costs and to holders of outstanding mortgages and other liens affecting the Property ("encumbrance holders"). SELLER's obligation to close the sale of the Property is contingent on the agreement of SELLER's encumbrance holders and/or court consent to:

   (a) accept a payoff which is less than the balance due under the encumbrances;

   (b) accept the closing disclosure or settlement statement; and

   (c) furnish a recordable satisfaction or release of the encumbrances.

   **NOTICE: IN A SHORT SALE TRANSACTION, SELLER MAY HAVE A CONTINUING FINANCIAL OBLIGATION TO SELLER'S ENCUMBRANCE HOLDERS AFTER CLOSING INCLUDING, BUT NOT LIMITED TO, EXECUTION OF A PROMISSORY NOTE IN FAVOR OF THE ENCUMBRANCE HOLDER(S) OR LIABILITY FOR A DEFICIENCY JUDGMENT. SELLER IS ADVISED TO SEEK COMPETENT LEGAL AND FINANCIAL ADVICE CONCERNING SELLER'S LEGAL, TAX AND FINANCIAL OBLIGATIONS.**

   **THE FACT THAT THIS SHORT SALE MAY BE CONSIDERED OR APPROVED BY ENCUMBRANCE HOLDERS DOES NOT AUTOMATICALLY IMPLY OR MEAN THAT ANY FORECLOSURE PROCESS HAS BEEN SUSPENDED OR DELAYED.**

2. SELLER shall, within 5 days from the date of the Agreement, initiate the process to have this short sale approved by all encumbrance holders and request in writing a delay of the foreclosure sale date if the foreclosure sale date is scheduled to take place before the date of closing. SELLER shall provide all information and documentation required by the encumbrance holders within 5 days after receiving the request(s).

3. If this short sale is not approved in writing by all encumbrance holders within ___120___ days (60 days if left blank) from the date of the Agreement ("Approval Deadline"), either BUYER or SELLER may terminate the Agreement by giving written notice to the other.

   If neither BUYER nor SELLER has delivered such termination notice within 5 days after the Approval Deadline, the Approval Deadline is extended one time only for 30 days. Any further extension must be by written agreement between BUYER and SELLER.

   BUYER and SELLER agree to cooperate in good faith without delay to achieve approval. SELLER shall deliver to BUYER a copy of the encumbrance holder(s)' approval or denial letter(s) within 2 days after

# SHORT SALE ADDENDUM continued

receipt by SELLER. Short sale approval means that all encumbrance holders shall agree to reduce their respective payoff amount(s) by an amount sufficient to permit the proceeds from the sale of the Property to pay the encumbrances and SELLER's closing costs and prorated items.

4. SELLER hereby authorizes and directs the following parties to freely communicate and share information with each other regarding the current status of the SELLER's application for short sale and of the approval or denial of same: encumbrance holders, Brokers to this transaction, closing attorney/settlement agent and short sale facilitators.

5. BUYER acknowledges that SELLER's **encumbrance holders are not parties to the Agreement** and are not obligated to consider or approve the Agreement within any specified time period. BUYER further acknowledges that SELLER and Brokers are not liable for encumbrance holders' delays, failure to approve this short sale or failure to complete this short sale after approving the Agreement.

6. Notwithstanding paragraph 11(B) of the Agreement, if this transaction does not close because the encumbrance holders do not approve this short sale, SELLER is not responsible for BUYER's loan and sale processing and closing costs incurred.

7. The date of acceptance of the Agreement shall be the date on which the Agreement is last executed by BUYER and SELLER and the fact of execution is communicated to the other party in writing **(not the date of encumbrance holders' approval).**

8. Time Periods: (Check one)

   (a) ☑ **Except for Approval Deadline and payment of binder deposit(s)**, all time periods for inspections, contingencies, loan application and loan approval shall begin from the date BUYER receives a copy of approval letters from all encumbrance holder(s). **The date of closing shall be on or before ___45___ days (45 days if left blank) after approval by the encumbrance holder(s) unless extended by other conditions of the Agreement.**

   (b) ☐ All time periods under the Agreement shall begin from the date of acceptance of the Agreement by BUYER and SELLER.

   If neither box 8(a) nor 8(b) is marked, then 8(a) shall apply.

9. All prorations shall be final at closing.

10. After BUYER's offer has been accepted by SELLER, SELLER may:

   (a) ☑ continue to market the Property as active contingent in the Northeast Florida Multiple Listing Service, Inc. ("NEFMLS"); or

   (b) ☐ not continue to market the Property as active contingent in the NEFMLS.

   Regardless of which of the above is marked, SELLER has the right to accept other offers as back-up agreements.

   If SELLER receives subsequent written offer(s) to purchase the Property, whether accepted or not, which SELLER intends to submit to encumbrance holders, SELLER must deliver to BUYER written notice of SELLER's intention within 24 hours after receipt of such other written offer(s) (the "Notice"). BUYER will have 5 days after delivery of the Notice to terminate the Agreement. If BUYER elects to terminate the Agreement, BUYER must notify SELLER of BUYER's election in writing within the 5 day period.

# SHORT SALE ADDENDUM continued

11. Unless otherwise directed in writing by SELLER's encumbrance holder(s), SELLER has an obligation to inform them in writing of all subsequent higher written offers, whether accepted or not, until SELLER has received written approval by encumbrance holder(s) of this short sale.

SELLER acknowledges that failure to inform SELLER's encumbrance holder(s) in writing of all subsequent higher written offers prior to receipt of written approval by SELLER's encumbrance holder(s) of this short sale may be construed as mortgage fraud. **THIS PARAGRAPH SHOULD NOT BE DELETED OR MODIFIED.**

| | | | |
|---|---|---|---|
| *Micah J. Ray* | 01/24/17 | *[signature]* | 2/15/17 |
| BUYER | DATE | SELLER | DATE |
| | | Ron Satija, in his sole capacity as Chapter 7 Trustee for the Bankruptcy Estate of Michael and Debra Humphreys, Case No. 16-10158 | |
| *Shannon Ray* | 01/24/17 | | |
| BUYER | DATE | SELLER | DATE |
| | | | |
| BUYER | DATE | SELLER | DATE |
| | | | |
| BUYER | DATE | SELLER | DATE |



# Purchase & Sale of Real Property Contract Addendum

300 TALWOOD TRACE ST JOHNS FL 32259

## Property Address

1. Buyer acknowledges that this property is subject to Short Sale Lender Approval & Bankrupt Court Approval.

2. The Bankruptcy Estate Fee is to be paid by the Sellers proceeds or through a buyer's premium and made payable to the Bankruptcy Estate.

3. Buyer acknowledges that the property is sold "AS IS". Absolutely no repairs will be authorized. The Seller is unable to remove any debris or personal property left on the Property and does not warrant that there will be any appliances or other personal property left on the Property.

4. Seller shall make no concessions and can pay no closing costs for the buyer.

5. Escrow will be opened with:

   | | |
   |---|---|
   | COMPANY NAME | Prominence Title & Escrow, LLC |
   | ADDRESS | 605 E. Robinson Street Suite #720 |
   | CITY, STATE, ZIP | Orlando, FL 32801 |
   | PHONE | 407-545-4940 |
   | EMAIL | marlene@prominencetitle.com |

6. Earnest money deposit will be no less than 1% of the purchase price. Upon acceptance, earnest money will be deposited with the Escrow/Title Company in the form of a cashier's check or bank wire within 48 hours of acceptance.

7. The Seller in this transaction is exempt from providing the Home Owner's Association documents, as this is a court-ordered sale. Buyer will be solely responsible for any application, transfer, capital contributions and initial membership fees charged by the Association. Buyer is aware it may take up to 10 days to receive a response from the Federal Bankruptcy Trustee (Seller).

8. Buyer may cancel the Residential Purchase Agreement for any reason without penalty any time after 120 days from Seller's acceptance date, if Short Sale Investor Approval has not been received.

9. Upon Investor approval of sale, buyer shall be prepared to close escrow within 45 days. Upon Bankruptcy Court Approval of sale, buyer agrees to close escrow per Federal Bankruptcy Trustee instructions.

**11** Buyer shall be responsible for the connection of utilities to perform inspections/final walk through pursuant to the Residential Purchase Agreement.

**12** Buyer acknowledges that the seller may not have access to garage remotes, mailbox keys or access related keys to property. Seller will tender any items available at the close of escrow but shall not be liable to provide items not in his/her possession.

**13** Buyer shall immediately disclose if he/she is related to the debtor. Buyer understands that most investors require an Arm's Length Disclosure, and some investors will not allow a family relation to purchase a property in which a related debtor may have interest.

**14** Should buyer be representing self as an agent, buyer understands that some investors will not allow Buyer(s) to receive any funds or commissions from the sale of the property.

**15** Property must be purchased in an individual name or LLC. Offers in the name of a corporation, trust or partnership are not acceptable. If purchased by an LLC, buyer shall provide a copy of the articles of organization to include authority of signer to sign on behalf of the LLC.

**16** Seller will not pay for Appraisal and/or Home Warranty.

Buyer understands and agrees that this addendum shall take precedence where any terms conflict with the original Residential Purchase Agreement.

DATED this        day of              , 201

| **Trustee** | **Buyer** |
|---|---|
| _(signature)_ | _Shannon Ray_ |
| Signature | Signature |
| Print Name | Print Name |
| Ron Satija, in his sole capacity as Chapter 7 Trustee for the Bankruptcy Estate of Michael and Debra Humphreys, Case No. 16-10158 | Shannon Ray |
| | Title |
| | **Buyer** |
| | Signature |
| | _Micah J. Ray_ |
| | Print Name |
| | Micah Ray |
| | Title |
| | Buyer |



# HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE ADDENDUM



THIS ADDENDUM IS MADE BY THE UNDERSIGNED BUYER AND SELLER AND IS INCORPORATED INTO AND MADE A PART OF THE PURCHASE AND SALE AGREEMENT AND DEPOSIT RECEIPT BETWEEN BUYER AND SELLER (THE "AGREEMENT"). THIS ADDENDUM IS REFERENCED IN THE AGREEMENT AND PERTAINS TO THE FOLLOWING PROPERTY: __300 TALWOOD TRCE ST JOHNS FL 32259_____
_____.

**IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE BUYER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.**

DISCLOSURE SUMMARY FOR _____JULINGTON CREEK PLANTATION "THE MEADOWS"_____
(NAME OF COMMUNITY)

1.   AS A PURCHASER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNER'S ASSOCIATION.

2.   THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.

3.   YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $____380_____PER__YEAR__YOU WILL ALSO BE OBLIGATED TO PAY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.

4.   YOU MAY BE OBLIGATED TO PAY A CAPITAL CONTRIBUTION TO THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $_____.

5.   YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.

6.   YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.

7.   THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $ _____ PER _____. (THIS PARAGRAPH IS NOT FOR COMMUNITY DEVELOPMENT DISTRICT FEES OR REGULAR ASSOCIATION FEES.)

8.   THE DEVELOPER MAY HAVE A RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.

9.   THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.

10.   THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

BUYERS BY THEIR SIGNATURE BELOW ACKNOWLEDGE RECEIPT OF THIS SUMMARY BEFORE SIGNING A PURCHASE AND SALE AGREEMENT AND DEPOSIT RECEIPT.

| _Micah J. Ray_ | 01/24/17 | _HH_ | 2/15/17 |
|---|---|---|---|
| BUYER | DATE | SELLER | DATE |

Ron Satija, in his sole capacity as Chapter 7 Trustee for the Bankruptcy<br>Estate of Michael and Debra Humphreys, Case No. 16-10158

| _Shawon Ray_ | 01/24/17 | | |
|---|---|---|---|
| BUYER | DATE | SELLER | DATE |

| _____ | _____ | _____ | _____ |
|---|---|---|---|
| BUYER | DATE | SELLER | DATE |

| _____ | _____ | _____ | _____ |
|---|---|---|---|
| BUYER | DATE | SELLER | DATE |




# COMMUNITY DEVELOPMENT
# DISTRICT ACKNOWLEDGEMENT

**COPYRIGHTED BY AND SUGGESTED FOR USE BY THE MEMBERS
OF THE NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, INC**

BUYER: Micah J Ray and Shannon L Ray (H&W)

PROPERTY ADDRESS: 300 TALWOOD TRACE ST JOHNS FL 32259                (the "Property")

### COMMUNITY DEVELOPMENT DISTRICT TAXES, FEES AND ASSESSMENTS

BUYER acknowledges that the Property is a part of a Community Development District ("CDD") created pursuant to Chapter 190, Florida Statutes. By acceptance of the deed conveying the Property, BUYER will be obligated to pay all taxes, fees and assessments imposed by the CDD.

**THE** JULINGTON CREEK PLANTATION **COMMUNITY DEVELOPMENT DISTRICT IMPOSES TAXES OR ASSESSMENTS, OR BOTH TAXES AND ASSESSMENTS, ON THIS PROPERTY THROUGH A SPECIAL TAXING DISTRICT. THESE TAXES AND ASSESSMENTS PAY THE CONSTRUCTION, OPERATION, AND MAINTENANCE COSTS OF CERTAIN PUBLIC FACILITIES AND SERVICES OF THE DISTRICT AND ARE SET ANNUALLY BY THE GOVERNING BOARD OF THE DISTRICT. THESE DISTRICT TAXES AND ASSESSMENTS ARE IN ADDITION TO COUNTY AND OTHER LOCAL GOVERNMENTAL TAXES AND ASSESSMENTS AND ALL OTHER TAXES AND ASSESSMENTS PROVIDED FOR BY LAW AND HOMEOWNER'S OR CONDOMINIUM ASSOCIATION ASSESSMENTS AND FEES.**

**CDD FEES ARE PAID IN ADVANCE, NOT IN ARREARS, AND WILL BE PRORATED AT CLOSING.**

*Micah J. Ray*
_____          01/24/17
BUYER                                             DATE

*Shannon Ray*
_____          01/24/17
BUYER                                             DATE

_____          _____
BUYER                                             DATE

_____          _____
BUYER                                             DATE

CDDA                                                              0815



January 23, 2017

Shannon Lynn Ray
Micah Ray
5244 Julington Creek Road
Jacksonville, FL 32258


SUBJECT:  Loan Evaluation


Based upon the income and asset information you provided with your application along with a preliminary review of a credit report, this letter is a confirmation of your preapproval for a mortgage loan based on the following terms:



Sales Price:  $325,000
30 year Conventional Fixed rate mortgage

This preliminary loan approval is subject to an Underwriter's final review of a credit report, all required employment and deposit verifications, a satisfactory property appraisal, preliminary title report and any documentation that the lender reserves a right to request.

We appreciate the opportunity to assist you with this transaction.

If you may have any questions regarding this letter or loan status, please feel free to call me at my office at (904) 269-5992.


Sincerely,

*Billi West*

*#306348*
Branch Manager





# AMENDMENT

**COPYRIGHTED BY AND SUGGESTED FOR USE BY THE MEMBERS
OF THE NORTHEAST FLORIDA ASSOCIATION OF REALTORS®, INC.**



This Amendment is made by and between MICAH J AND SHANNON L RAY

(BUYER) and RON SATIJA BK TRUSTEE FOR THE ESTATE OF MICHAEL AND DEBRA HUMPHRIES

(SELLER), who are parties to that certain Purchase and Sale Agreement and Deposit Receipt dated 02/15/17 for

the following property: 300 TALWOOD TRACE ST JOHNS FL 32259

_____(the "Agreement"). For good and valuable

consideration, the receipt and sufficiency of which are hereby acknowledged, BUYER and SELLER agree to

amend the Agreement as follows: _____

PURCHASE PRICE IS 355,000.00

CLOSING IN 60 DAYS OR LESS

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Except as modified by this Amendment, the Agreement shall remain unchanged and in full force and effect. In any
conflict of terms between this Amendment and the Agreement, the terms of this Amendment shall govern.

| BUYER | DATE 04/04/2017 | SELLER | DATE 4/5/17 |
|---|---|---|---|
| BUYER | DATE 04/05/17 | SELLER | DATE |
| BUYER | DATE | SELLER | DATE |
| BUYER | DATE | SELLER | DATE |

AMENDMENT                                                                 0815r

| American Land Title Association | ALTA Settlement Statement - Combined |
|---|---|
| | Adopted 05-01-2015 |

FileNo./Escrow No.: 17-071
Print Date & Time: 6/27/2017 @ 2:09 PM
Officer/Escrow Officer: Marlene Benner
Settlement Location:
605 E. Robinson Street #720
Orlando, Florida  32801

**Prominence Title & Escrow, LLC**

**605 E. Robinson Street #720**
**Orlando, Florida  32801**

Property Address: 300 Talwood Trace, St. Johns, Florida  32259
Buyer: Micah J. Ray Shannon L. Ray
Seller: Ron Satija, as Bankruptcy Trustee for the Estate of Michael E. Humphreys and Debra D. Humphreys, under Case No. 16-10158-tmd, U.S. Bankruptcy Court, Western District of Texas (Austin)
Lender: Network Funding Residential Mortgage Lender
Loan Type: FHA Settlement

Settlement Date: 7/31/2017
Disbursement Date:  /  /
Additional dates per state requirements:

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Financial** | | |
| | $355,000.00 | Sales Price of Property | $355,000.00 | |
| | | Deposit including earnest money | | $3,520.00 |
| | | Loan Amount | | $334,400.00 |
| | | Title - Insurance Seller Credit | | $1,850.00 |
| $1,850.00 | | Title - Insurance Seller Credit | | |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | $159.40 | Non-Ad Valorem from 7/31/2017 to 9/30/2017 | $159.40 | |
| | $177.21 | HOA Dues from 7/31/2017 to 12/31/2017 | $177.21 | |
| $2,424.81 | | County Taxes from 1/1/2017 to 7/30/2017 | | $2,424.81 |
| | | | | |
| | | **Other Loan Charges** | | |
| $500.00 | | Survey Fee-Seller Pays per Contract to TBD | | |
| | | | | |
| | | **Title Charges & Escrow / Settlement Charges** | | |
| | | Title - Endorsement 5.1 to Prominence Title & Escrow, LLC | $35.00 | |
| | | Title - Endorsement 8.1 to Prominence Title & Escrow, LLC | $35.00 | |
| | | Title - Endorsement FL Form 9 to Prominence Title & Escrow, LLC | $210.00 | |
| | | Title - Lender's Coverage Premium to Prominence Title & Escrow, LLC | $1,747.00 | |
| $1,750.00 | | Title - Settlement Fee to Prominence Title & Escrow, LLC | $600.00 | |
| $60.00 | | Title - Title Search Fee to Westcor Land Title Insurance Company | | |
| | | Title - Owner's Coverage Premium to Prominence Title & Escrow, LLC | $353.00 | |

| | | | | |
|---|---|---|---|---|
| | | **Commission** | | |
| $7,100.00 | | Real Estate Commission (Buyer) to Crossview Realty | | |
| $7,100.00 | | Real Estate Commission (Seller) to Core Realty LLC | | |
| $7,100.00 | | Real Estate Commission Court Ordered to BK Global | | |
| | | | | |
| | | **Government Recording & Transfer Charges** | | |
| | | Recording Fees to Simplifile | $224.00 | |
| | | Cert Copies of Order to Sell to Prominence Title & Escrow, LLC | $25.00 | |
| | | E-Record Court Order to Sell to Simplifile | $95.00 | |
| $2,485.00 | | Transfer Taxes - Deed State to Simplifile | | |
| | | Transfer Taxes - Intangible Tax to Simplifile | $668.80 | |
| | | Transfer Taxes - Mortgage State to Simplifile | $1,170.40 | |
| | | | | |
| | | **Payoff(s)** | | |
| $229,688.95 | | Lender: FCI Lender Services, Inc | | |
| | | Principal Balance ($229,688.95) | | |
| | | Interest on Payoff Loan () | | |
| $71,715.16 | | Lender: Chase | | |
| | | Principal Balance ($71,715.16) | | |
| | | Interest on Payoff Loan () | | |
| | | | | |
| | | **Miscellaneous** | | |
| | | 2016 Real Property Taxes PAID 11/13/16 to St. Johns County (POC by Seller: $4,927.68) | | |
| $20,837.47 | | Bankruptcy Estate Fee to Ron Satija, Bk Trustee for the Estate of Michael & Debra Humphreys | | |
| | | E-Recording Fee to Simplifile | $14.50 | |
| $750.00 | | Estoppel Fee to Elite Property Research | | |
| $100.00 | | Estoppel Preparation Fee for HOA to Julington Creek Plantation Property Owners Assn, Inc | | |
| | | HOA Transfer Fee to Micah J. Ray, Shannon L. Ray | $75.00 | |
| | | Mobile Notary Fee to Signature Closers Network | $135.00 | |
| $179.00 | | Municipal Lien Certificate Fee to Elite Property Research | | |
| $1,696.22 | | PAST DUE HOA to Ansbacher Law | | |

| Seller | | Description | Borrower/Buyer | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| $355,336.61 | $355,336.61 | **Subtotals** | $360,724.31 | $342,194.81 |
| | | Due From Borrower | $18,529.50 | |
| | | Due From Seller | | |

**Acknowledgement**
We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement.  We/I authorize Prominence Title & Escrow, LLC to cause the funds to be disbursed in accordance with this statement.

Borrower: _____     Seller: _____
             Micah J. Ray                                       Ron Satija, Bk Trustee for the Estate of Michael & Debra Humphreys

Borrower: _____
             Shannon L. Ray

I have reviewed the Closing Disclosure, the settlement statement, the lender's closing instructions and any and all other forms relative to the escrow funds, including any disclosure of the Florida title insurance premiums being paid, and I agree to disburse the escrow funds in accordance with the terms of this transaction and Florida law.

_____
Escrow Officer